JOHN R. BEGGS, Doing Business under the Firm Name and Style of J. R. BEGGS & Co., Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

(Supreme Court, Appellate Term, First Department, December, 1916.)

Carriers — of merchandise — failure to care for and deliver goods — bills of lading — evidence — verdict.

In a shipper's action for failure to properly care for and deliver three carloads of potatoes it appeared that they were received by defendant from connecting carriers, consigned to the order of plaintiff at New York city with instructions that

the purchaser be notified upon their arrival and no delivery was to be made except on surrender of the original bills of lading properly indorsed. The bills of lading with drafts attached were sent to a New York bank and though the purchaser was notified of the arrival of the potatoes it never paid the drafts nor received the bills but directed defendant to deliver the potatoes to a certain dock, which it did ten days later not having in the meantime received the bills of lading, and while on said dock three days the potatoes were frozen, and upon the purchaser's refusal to accept them they were removed to a warehouse and later sold for less than the original purchase price. Held:

That as the bills of lading required the shipper to protect the potatoes from frost which could easily have been done in the cars defendant was not justified in unloading them where they were liable to freeze, defendant having no authority from plaintiff to unload except under the general provisions of the bills of lading whereby it had the right to store for the benefit of the shipper.

That there being some evidence that plaintiff's broker in New York who made the sale to the purchaser had authority to and did bind plaintiff by consenting to or ratifying a delivery at a point other than as called for by the bills of lading, the exclusion of testimony by defendant tending to show before such delivery said broker knew of and consented thereto and afterwards ratified it called for the reversal of a judgment for plaintiff on a directed verdict.

APPEAL by the defendant from a judgment of the City Court of the city of New York, entered on a directed verdict in favor of the plaintiff, and from an order denying motion for a new trial.

Alexander S. Lyman (William Mann, of counsel), for appellant.

Neil P. Cullom, for respondent.

FINCH, J. Action against the defendant railroad for failure to properly care for and deliver three carloads of potatoes.

The potatoes were shipped by the plaintiff and

received by the defendant from connecting carriers. The bills of lading show that they were consigned to the order of the plaintiff at New York city, with instructions that Parker Philips Company, the purchaser of the potatoes, be notified upon their arrival. The bills of lading also contain a stipulation for "60th Street delivery (lighterage free)" and a provision that the merchandise was not to be delivered to any one except on the surrender of original bills of lading properly indorsed. The potatoes arrived in New York city about February 1, 1916, and the purchaser, Parker Philips Company, was notified. The bills of lading had been sent with the drafts attached to a New York bank, but the purchaser never paid the drafts nor received the bills. The purchaser instead directed the railroad to deliver the potatoes to the railroad's Barclay street docks. On February eleventh, the railroad, without having received the bills of lading which was necessary before a delivery could be made, lightered the cars to Barclay street and unloaded them on the dock where the potatoes remained until February fourteenth. While lying on the dock they were frozen and the purchaser refused to accept them. They were then removed to a warehouse, and sold in March for much less than the original purchase price. The court directed a verdict against the defendant for $1,742.45, and there is no question raised as to this amount.

The railroad was not justified in unloading the potatoes on the dock where they were liable to freeze. The bills of lading required the shipper to protect them from frost, and that could easily have been done in the cars. The plaintiff personally gave no authority to unload except under the general provisions of the bills of lading, whereby the carrier has the right to store for the benefit of the shipper if there is a

delay in accepting the goods.   The carrier was not acting under those provisions because it would then be liable as a warehouseman.   The railroad claims that the direction from Parker Philips Company to deliver the potatoes at Barclay street was sufficient authority under the custom in New York and the schedules filed with the interstate commerce commission.   Suffice it to say that the bills of lading called for delivery at Sixtieth street and the surrender of the bills before delivery.   The bills of lading are not ambiguous, and the schedules filed are not at variance with them.   It is true the bills provide for free lighterage, but that is only in case the purchaser desires to avail himself of this free lighterage after a surrender of the bills of lading.

There was some evidence, however, that the plaintiff's broker in New York, who made the sale to Parker Philips Company, had authority to bind the plaintiff and did bind the plaintiff by consenting to or ratifying a transfer to Barclay street.   The defendant offered evidence to show that before the transfer this broker knew of the transfer and consented to it, and also that afterwards he ratified it.   This evidence was improperly excluded, and because of the exclusion of this evidence a new trial must be had.

Judgment reversed and a new trial ordered, with costs to appellant to abide the event.

WHITAKER, J., concurs in result.

LEHMAN, J. (concurring).   The plaintiff shipped several carloads of potatoes by an order bill of lading from Wisconsin to New York.   The bill of lading contains the following words: " Consigned to order of J. R. Beggs & Co., Destination New York, State of N. Y.   Notify Parker Philips Co."

The cars arrived at the Sixtieth street station of

the defendant in good order. The defendant thereupon notified Parker Philips Company of the arrival of the car. That company without surrender of the bills of lading directed that the cars be delivered at the defendant's Barclay street dock. The defendant, in accordance with this direction, moved the cars to its Barclay street dock and there unloaded the potatoes. The potatoes froze while on this dock. The plaintiff claims that the defendant had no right to accept any directions to remove the goods from its Sixtieth street station except upon presentation of the bills of lading. He also claims that the defendant acted negligently in unloading the potatoes during freezing weather. The learned trial justice directed a verdict in favor of the plaintiff and it is quite plain that the judgment must be reversed unless the defendant as a matter of law had no right to remove the cars consigned from the Sixtieth street station, upon the order of the party whom it was directed to notify without presentation of the bills of lading.

The bill of lading had indorsed on its face the words " lighterage free," and there is no dispute that, under the rules and tariffs of the interstate commerce commission, the shipper under such a bill of lading is entitled to free lighterage and delivery of the goods shipped to certain places within the harbor of New York. If the point of delivery under this bill of lading is to be regarded as the point of final destination after such free lighterage, then the defendant did not act wrongfully, as a matter of law, in accepting the order of Parker Philips Company to deliver the cars on the Barclay street dock; on the other hand, if the point of delivery is the Sixtieth street station and by its contract the carrier has merely agreed to provide free lighterage after such delivery, then the carrier could not transfer the shipment except upon the order of the holder of the bill of lading.

If the contract expressly and unambiguously provided that the point of delivery was to be the Sixtieth street station then the rules and tariff which the defendant introduced, and the testimony as to the custom to accept orders from the party to be notified of the arrival of the shipment, would be immaterial and incompetent. On the other hand, if the bill of lading contained only the provisions which I have quoted above, it would, I think, be evident that the defendant had not agreed to make delivery at any particular point in New York city but had agreed to deliver the goods without charge for lighterage to some point directed by the shipper or his successor, and then the evidence that the rules and tariffs filed with the interstate commerce commission provided for a written '' order for disposition from consignee or party notified '' would be material and the offered testimony of general custom to accept orders from the party notified would not vary but would explain the intent of the parties. In the present case the contract in addition to the parts which I have cited contains the words '' 60th Street delivery '' and the plaintiff claims that under this contract the place of delivery is definitely fixed at Sixtieth street. There are several facts which militate against such construction. In the first place the contract provides for '' lighterage free '' and the defendant's contract was not fulfilled by delivery at Sixtieth street but concededly it was required to transfer by lighter to some other point when so directed. It would seem to me unreasonable to hold that the carrier was required to make some kind of constructive delivery at the intermediate point, receive the bills of lading and then either return them or make some new kind of receipt by which the consignee could obtain them at the point of final delivery. In this connection it seems to me that the filed tariff

rules are of some importance. These rules provide that " all carload shipments for delivery locally or to vessels in New York harbor transported under domestic bill of lading to New York, not consigned direct to an established freight station of this Company as shown in list of station deliveries on pages 5 to 13 inclusive of this circular will be held in or on cars, piers or warehouses at 60th Street Station or 33d Street Station, New York, until receipt of written order for disposition from consignee or party notified of arrival under the terms of the bill of lading and while so held at 60th Street Station or 33d Street Station, New York, awaiting such orders for disposition the freight will be subject to car demurrage or storage rules as on file with the Interstate Commerce Commission and Public Service Commission of the State of New York, and the carrier shall not be liable for loss, damage or delay, except in cases of negligence of the carrier."

The defendant claims that this rule has no application to the present case because the Sixtieth street station is one of the stations shown in the list to which direct consignment may be made. While the rule is not entirely clear without explanation of the technical terms used, it would seem to me that this rule is intended to apply to any shipment made unless " consigned " to this direct or to some other station even though this station may be named as an intermediate point of delivery where the cars were to be transferred to lighters. In other words, it would seem to me that this rule applies to all cases where the contract between the shipper and the carrier was that the goods were to be delivered to the consignee at some point within the lighterage limits not determined at the time the goods were shipped or at some point which was not an established freight station and had

no application only in those cases where the goods were consigned direct to one of the established freight stations to be delivered there without further order from the consignor or consignee. The fact that under this contract the shipper had stipulated for "60th Street delivery" pending transfer to lighters, merely shows that the defendant was bound to hold the cars at that station instead of at the Thirty-third street station, at its option. In the second place, the words "60th Street delivery" were not inserted in the blank after the printed word "Destination." On the contrary, they are inserted partly above the blank for the route and partly in the blank beginning with the word "notify." They are not, I think, the place of destination but part of the route agreed upon by the parties. In the absence of further explanation it seems to me that under this contract the parties agreed that the carrier should receive the cars for shipment to the city of New York; that the cars were to be brought over a certain route to the Sixtieth street station of the defendant but that the cars were not consigned there for delivery to the consignee unless the consignee elected to take delivery at that point and that the carrier was required to hold the goods at that point until it received notice of the point where actual delivery was to be made. Certainly evidence that under the rules filed with the tariff commission, and under the customs of shippers, the order as to the point of final delivery could be given by the person to be notified of the arrival of the cars does not vary but does explain the contract.

For these reasons as well as for the reason stated in the opinion of Mr. Justice Finch, I think that the judgment should be reversed and a new trial ordered.

Judgment reversed, and new trial ordered.